# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7075 | **DATE** | 2/13/2003 |
| **CASE TITLE** | William Lucas vs. Chicago Transit Authority | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Chicago Transit Authority's Motion for Summary Judgment is granted and this case is dismissed. Trial date stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | FEB 14 2003 | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 31 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 03 FEB 13 PM 3:27 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

```
                                                             FILED
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS FEB 1 3 2003
                 EASTERN DIVISION
                                            JUDGE HARRY D. LEINENWEBER
                                             U.S. DISTRICT COURT JUDGE
```

WILLIAM LUCAS,

          Plaintiff,

          Case 01 C 7075

v.

          Hon. Harry D. Leinenweber

CHICAGO TRANSIT AUTHORITY,

          Defendant.

```
                                                    DOCKETED
                                                    FEB 1 4 2003
```

## MEMORANDUM OPINION AND ORDER

The Plaintiff, William Lucas ("Lucas"), a maintenance employee of the Chicago Transit Authority (the "CTA"), contends that he was a victim of disparate treatment based on his race (African-American), subjected to a racially hostile work environment, and was retaliated against because he had complained of racial discrimination. The CTA contends that the first claim and a portion of the second are time barred and the balance of the second and the third claim are factually unsupported. Accordingly, the CTA has moved for summary judgment.

### BACKGROUND

Lucas began working for the CTA in the Track Maintenance Department in 1993. In 1997 he filed a complaint of discrimination with the CTA's internal Affirmative Action Unit, alleging that his supervisors, including James Blatz ("Blatz"), a yard master, had unfairly denied him the opportunity to operate a particular machine and to work overtime based on his race. However, he did not file

a charge with the Equal Employment Opportunity Commission (the "EEOC") or the Illinois Department of Human Rights (the "IDHR").

It was not until February 1, 2002, that Lucas for the first time filed a complaint with the EEOC. In that complaint he resurrected all of these 1997 complaints as well as some new ones such as being badgered by his supervisor, Emilio Escorcia ("Escorcia"), unfairly being cited in the summer of 2000 for poor work performance, and for suspending him after a January 18, 2001 incident involving Blatz. On July 3, 2001, Lucas filed a second charge with the EEOC alleging that a number of incidents occurring between January 23, 2001 and July 3, 2001, constituted retaliation. Finally, Lucas filed a third charge on September 2001 alleging that an August 2001 three-day suspension was retaliatory.

### *The 1997 Internal EEO Complaint*

In 1997, Senior Road master, James Blatz, suggested that Lucas apply for a transfer from the position of inspector to that of a machine operator. Lucas agreed to the transfer and was trained to operate the Tie Inserter/Tie Extractor machine as well as a Tie Handler. The Inserter/Extractor puts in and removes ties while the Handler, similar to a crane, stacks them. Blatz primarily assigned Lucas to the Handler which did not make him happy. He complained to the CTA's EEO Department in September 1997. The complaint was investigated by the EEO Department and resulted in a finding of cause against Blatz for not allowing Lucas sufficient time on the

Inserter/Extractor. The 1997 complaint with the EEO did not allege that Lucas believed he was subjected to a racially hostile work environment, although in 1999 Lucas did tell his Manager, Beverly Williford ("Williford"), that he believed this to be the case but that he did not wish to pursue a legal case. In December 1997, Lucas transferred from machine operation to track maintenance so that he was no longer supervised by Blatz. Lucas raised the hostile work claim for the first time in his 2001 complaint filed with the EEOC which alleged that Blatz continuously used racial slurs toward him in 1997.

### *The January 18, 2001 Incident*

Lucas had no substantive contact with Blatz after his transfer until an incident occurring on January 18, 2001. On that date Lucas and his partner, Jose Quintana ("Quintana"), stopped a CTA train 500 yards short of a station in order to hitch a ride so they could get to lunch more quickly. Coincidentally Blatz, still a senior yard master, happened to be on the train at the time it was stopped for Lucas and Quintana. Blatz verbally reprimanded both men for stopping a train unnecessarily in violation of the CTA work rules. According to Lucas, Blatz flew into a rage and grabbed him by the shoulder so hard that it bruised his neck. Lucas filed a complaint with the CTA and contacted the Chicago Police Department and filed a criminal complaint against Blatz alleging assault. The criminal complaint was subsequently dismissed.

The General Manager of Power and Way Maintenance, Frank Machara ("Machara"), conducted an internal investigation into the incident based on Lucas' complaint. He ordered Track Maintenance Manager, Fred Tijan ("Tijan"), to interview Blatz, Lucas, and other CTA employees who witnessed the incident. Blatz's involvement was limited to a statement which he gave Tijan. Blatz told Tijan about the internal EEO complaint Lucas filed against him in 1997 but stated that nothing had come of it. Machara was not told about Lucas' 1997 complaint against Blatz. Machara concluded that Lucas had given a false report to the CTA and the police concerning the incident. Machara recommended that Lucas be terminated. However, the CTA's employee Relations Department recommended that Lucas be suspended and not terminated. Machara accepted the recommendation and Lucas was suspended for 22 days. Lucas returned to work following his suspension.

### *The July 2002 Charges*

In Lucas' July 3, 2001 EEOC charge, he accused his Road master, Emiliano Escorcia, of ordering him to stop trains and to ride them to various job sites. Escorcia had ordered this so that Lucas and his partner could take equipment to the job site. Lucas told Escorcia that his orders were "stupid and idiotic." Escorcia referred the matter to the Track Maintenance Department, who, after an investigation, suspended Lucas for one day for disrespect to management.

### *The August 17, 2001 Incident*

The other incident Lucas complained of occurred on August 17, 2001. Escorcia order a group of employees to go on the track and strip a rail joint. He had requested a flag man to report to the job site to protect the workers. The flag man was delayed. Lucas and Quintana were ordered by Escorcia to go on the track and make the repairs. Quintana did so but Lucas refused and left the job site without permission and stayed away the remainder of the day. The incident was investigated by the CTA and Lucas was charged with insubordination, refusing a work assignment, and leaving the assigned work location without permission, which is a gross misconduct/behavioral violation. Lucas received a three-day suspension. Other than giving a statement, Escorcia had no role in determining the discipline. This was Lucas' third gross/misconduct/behavioral violation within a rolling one-year period. Under the CTA rules he could have been discharged.

### **DISCUSSION**

The CTA contends that the court should reject Lucas' claims of discrimination that occurred in 1997 because they were not timely filed. A Title VII plaintiff must file a complaint with the EEOC or the corresponding state agency within 300 days of the act or acts of discrimination. Lucas filed his EEOC charge on February 1, 2001. Thus, according to the CTA, the 1997 incidents are time barred. Lucas argues that these claims are saved by the doctrine

of equitable estoppel and by the continuing violation theory. Equitable estoppel applies, he says, because he was led to believe that the CTA EEO department had issued findings of race discrimination so that he believed that the CTA would do something about his complaint, but that he was not told that CTA higher-ups disagreed with the findings so that Blatz was not disciplined.

The leading Seventh Circuit case on equitable estoppel, cited by both parties, is *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Equitable estoppel only applies where a defendant takes active steps to prevent the plaintiff from suing on time, such as promising not to plead the statute of limitations or presenting a plaintiff with forged documents purporting to negate any basis for the plaintiff's claim. In this case the CTA did not take any steps to prevent Lucas from suing on time. As a matter of fact the CTA in effect told Lucas that he may well have a claim when it advised him in writing that there was a basis for his complaints against Blatz. Since he was not told that the CTA higher-ups had disagreed with this finding and decided not to take action against Blatz, Lucas could not have been misled into believing that he did not have a claim.

Lucas does not fare better on his other effort to avoid the limitation period: the applicability of the continuous violation doctrine. This doctrine was recently subject to Supreme Court review in *National Railway Passenger Corp. v. Morgan*, 122 S.Ct.

2061 (2002). Discrete acts of discrimination must be filed within the applicable time limits or are barred. Acts that in and of themselves are not discrete, *i.e.*, insufficient in themselves to support a complaint of violation of Title VII, but are part of a course of conduct that over a period of time would justify a complaint are timely if one of the acts occurred within the applicable statute of limitations. Lucas cannot avail himself of the continuing violation doctrine for two reasons. First, the acts, at least in his mind were sufficiently severe to constitute a discrete act because he told his manager in 1999 that he thought he had been a victim of racial harassment but had decided not to pursue a legal claim. Second, after he was transferred away from Blatz in December 1997, he had nothing more to do with him until the January 2001 incident. Accordingly, the 1997 incidents are time barred.

Lucas' next claim is that he was disciplined in a discriminatory manner, when he was written up for poor performance twice in the year 2000 by his boss, Escorcia, and was suspended for 22 days for filing a false police report concerning Blatz. To establish such a claim an African-American plaintiff must show that similar situated non-black employees who committed similar infractions were dealt with less severely. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 546 (7th Cir. 2002). With regard to the two write ups in 2000, the evidence shows that

Escorcia, a Hispanic, wrote up Lucas' Hispanic partner Quintana, for exactly the same reasons. With regard to the January 18 incident, Lucas was disciplined for filing a false police report against Blatz, not for stopping the train. There is no evidence that any other CTA employee was ever dealt with differently because the record shows no other instance where a false report was filed by a CTA employee. Although Lucas contends that the discipline resulted from Blatz's animosity due to the 1997 EEO complaint he filed against him, Frank Machara and not Blatz was the decision maker. Lucas contends that Machara did not conduct a fair and thorough investigation because he relied upon Blatz's "lie" that the complaint made by Lucas "did not amount to anything." However, the evidence shows that the CTA reviewers did not lend credence to the findings of its EEO so, as Lucas argues at another point, they discredited their own investigation and thus the complaint did not amount to "anything." There is no evidence that Machara was in anyway aware of any facts that would have discredited his conclusion that Lucas had falsified the reports.

The other incidents also fail to show that Lucas was subject to improper discipline. He told his superior that his order was "stupid and idiotic." He walked off the job without permission. He has not produced any evidence that any other employee who engaged in similar conduct was not disciplined, or given a lesser discipline, than he received. Lucas admits that these incidents (with the exception of the false report filing) actually occurred.

It was incumbent upon him to produce evidence that the disciplines were excessive either compared to non-black employees, or motivated by either racism or retaliation. He has failed to meet this burden.

Lucas also contends that he was subject to racial discrimination at the hands of his supervisor Escorcia, who, according to Lucas, regularly demeaned African-Americans with his comments. However, Lucas has provided no support for his general statements as to such comments, such as time, place, and who was present. The court cannot even say that any such comments occurred within the statute of limitations. Other than Lucas' general statements, he has provided no support from other employees as to such alleged demeaning comments. The CTA has moved to strike Lucas additional statements of uncontested facts with regard to Escorcia's alleged comments for lack of foundation. The motion is granted.

### CONCLUSION

For the above reasons the CTA's Motion for Summary Judgment is granted and the case is dismissed.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: February 13, 2003